**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SANDRA GRANBERRY,

     Plaintiff,                                                         Case No. 06-11939

-vs-                                                                       Hon. Lawrence P. Zatkoff

FORD MOTOR COMPANY,
a Delaware corporation,

     Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on September 27, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court upon cross-motions by the parties as to whether the administrative decision related to Plaintiff's credited service should be upheld. The parties have fully briefed the issue, filed all appropriate responses and replies, and provided the Court with supplemental documentation at the Court's request. The Court finds that the facts and legal arguments pertinent to the parties' motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion to Affirm ERISA Administrative Decision (Docket #7) is GRANTED, and Plaintiff's Motion to Set Aside the

Administrative Decision Related to Plaintiff's Credited Service (Docket #8) is DENIED.

## II. BACKGROUND

Plaintiff began her employment with Ford Motor Company ("Defendant") as an hourly employee in the Service Parts Packing department of the Ford New Holland Plant on May 3, 1976. Plaintiff suffered a work-related injury on or around November 1, 1989. On February 1, 1990, Plaintiff was placed on an extended medical leave of absence.

On July 31, 1990, Defendant announced the formation of a new company, New Holland, Inc. ("NHI"), to purchase the Ford New Holland Plant. The majority stake (80%) in NHI would be owned by Fiat Spa, and the remaining 20% would be owned by Defendant. NHI was to "maintain overall compensation and benefits substantially comparable to those currently in effect for Ford New Holland employees for at least two years and honor existing collective bargaining agreements." On May 6, 1991, Defendant sold 80% of its shares in NHI to Fiat Spa, and on that date, all active Ford New Holland employees became Fiat Spa (NHI) employees. Pursuant to the terms of the sale, however, Plaintiff remained an employee of Defendant for as long as she remained on extended medical leave.

On September 25, 1991, Plaintiff returned to work from her extended medical leave of absence, and pursuant to the terms of the sale, Plaintiff became an employee of NHI. On the same day, Plaintiff completed an "Hourly Application – Return To Ford Option" (the "Application"). As explained on the Application, if her request for reinstatement to Ford was granted, she would be "reinstated to the new [Ford] location with Plant Seniority Date the same as [her] Transfer Leveling Seniority Date as applicable under Article VIII, Section I(c) of the Agreement." Although Plaintiff

2

completed the Application on September 25, 1991, she apparently did not return to work for Defendant until November 15, 1993. Due to ongoing medical problems, Plaintiff retired on November 1, 1994.

When Defendant calculated Plaintiff's seniority and service credits upon her retirement, Defendant determined that she had 17.70 credits and her lifetime benefit monthly benefit would be $1,158.47, commencing in December 1994. While conducting a routine audit/service review in 2003, however, Defendant concluded that an error was made in the original calculation of Plaintiff's credited service years. Defendant's then calculated that Plaintiff's total credited service should have been 15.70 years, not 17.70 years, because she should not have received credit for the period from September 25, 1991, though November 15, 1993. As a result, Defendant determined that Plaintiff's revised total monthly pension benefit would be $601.02, and that her monthly benefit payments would be reduced from August 1, 2003, through March 1, 2005, to recover the overpayments previously made.

Plaintiff asked Defendant to conduct a credited service review and recalculation of her pension credits. Pursuant to Plaintiff's request, Defendant performed a review of Plaintiff's credited service and employment with Defendant. Defendant again determined that her total pension credits with Defendant should have been 15.70. Plaintiff, still not in agreement with the calculation of her pension credits, contacted a union representative and requested her assistance in resolving the issue of the correct amount of benefits due. Upon receipt of the union representative's letter, Defendant again reviewed Plaintiff's years of credited service, and affirmed its decision that Plaintiff was entitled to only 15.70 pension credits and monthly benefit payments based upon same. Plaintiff then commenced the present action.

3

## III. LEGAL STANDARD

A court reviews *de novo* the denial of benefits sought under §502(a)(1)(B) of ERISA "unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan affords the administrator or fiduciary the discretion to make those decisions, the denial of benefits is reviewed only to determine if such decisions were "arbitrary and capricious." *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 983 (6th Cir. 1991).

In the present matter, Defendant contends that the language of the Plan clearly vests discretion in Defendant's administrator (the Board) to interpret the language of the Plan and determine eligibility for retirement benefits:

> The Board shall have jurisdiction to pass upon all questions concerning the application or interpretation of the provisions of the Plan which it is empowered to administer. The Board shall decide all such questions in accordance with the terms of the Plan, and all such decisions of the Board shall be final and binding upon the Company, the Union, the employees, and the beneficiaries or claimants under the Plan, subject only to the arbitrary and capricious standard of judicial review[.]
>
> * * *
>
> The Board shall have such powers as are necessary for proper administration of the Plan, including the following: … (b) To make findings of facts and determinations as to the rights of any employee applying for retirement benefits, and to afford any such individual dissatisfied with any such findings or determinations the right to a hearing thereon … (c) to develop procedures for the establishment and verification of creditable service of employees … [and] (d) To obtain from the Company, from the Union, and from employees such information as shall be necessary for proper administration of the Plan.

Despite the foregoing language, the Court cannot agree with Defendant's belief that this

matter should be reviewed under the arbitrary and capricious standard. In reviewing the documents submitted by Defendant, the Court notes that none of them include a statement or evidence that the Board ever reviewed the number of service credits to which Plaintiff was entitled. To the contrary, there are numerous examples and statements that demonstrate that the Board did not, and would not, review materials pertaining to the calculation of years of service because the Board did not have jurisdiction over years of service issues. *See, e.g.,* Declaration of Michelle Block and Exhibit 1 attached thereto (Docket #14). Accordingly, the Court reviews this matter *de novo*.

## IV. ANALYSIS

The parties agree that Plaintiff was entitled to 15.70 service credits with Defendant based on her employment by Defendant from May 3, 1976, to September 24, 1991. The issue before the Court is how to allocate the service credits accrued by Plaintiff subsequent to her return from her extended medical leave of absence on September 25, 1991, and prior to November 15, 1993. Specifically, the question that must be answered is whether Plaintiff was employed by NHI or Defendant between September 25, 1991, and November 15, 1993, such that the service credits earned by Plaintiff during this time period are to be honored by NHI or Defendant? Defendant determined that (1) Plaintiff was employed by NHI during that time, (2) Plaintiff was not entitled to service credits with Defendant for the period of September 25, 1991, to November 15, 1993, (3) Plaintiff's total service credits with Defendant were 15.70, and (4) Plaintiff must look to NHI with respect to any service credits or benefits that accrued during the period of September 25, 1991, to November 15, 1993.

The Court finds that the Defendant's decisions in this matter are supported by the evidence

in the record. Although the evidence in the record regarding the core issue is surprisingly sparse, a few things are very clear. First, Plaintiff undisputably returned to work from her extended medical leave on September 25, 1991. Pursuant to the terms of the transaction between Defendant and Fiat Spa which transferred the ownership of NHI, all employees of Defendant who were on Union Leave of Absence at the time of the sale (May 6, 1991) continued to be employed by Defendant until they returned to work from such leave. When they returned from such leave, however, such employees then became employees of NHI. Accordingly, when Plaintiff returned to work on September 25, 1991, she became an employee of NHI, not Defendant. Therefore, until such time as Plaintiff was reinstated as an employee of Defendant, she would not accrue any additional service credits with Defendant.

Second, contrary to Plaintiff's contentions, she did not automatically resume working for Defendant upon completing the Application on September 25, 1991. As the title of the document suggests, the document was a form that had to be filled out by Plaintiff in order to return to work for Defendant. And, in order to "return" to work for Defendant, Plaintiff necessarily would have been working for another entity (NHI). Moreover, the Application was in fact an "application" (*i.e.*, a request) for reinstatement with Defendant. By filling it out, Plaintiff was applying to be reinstated, she was not actually reinstated.

Third, as Defendant asserts, and Plaintiff does not contest, Plaintiff was paid 1343.6 hours by NHI (and only 155 hours by Defendant) in 1993. A December 1, 2003 email prepared by one of Defendant's representatives includes a sentence that supports those assertions. In addition, a document submitted by Plaintiff (and prepared by Defendant) shows that the amount of Plaintiff's taxable earnings from Defendant in 1993 are essentially equivalent to 155 hours worked at the pay

6

rate Plaintiff earned. Accordingly, the Court finds that the record is clear that Plaintiff was not entitled to any service credits from Defendant during 1993.[1]

Somewhat less clear from the record is the identity of Plaintiff's employer during the last three months of 1991 (following her September 25, 1991 return) and all of 1992. Plaintiff argues, and documentation supplied by both parties shows, that during this time (namely October 1991 through May 1992), Plaintiff continued to be on medical leave and was paid out of Defendant's disability fund. The most troubling documents are the W-2s for 1992 supplied by Plaintiff, together with a document submitted by Plaintiff (and prepared by Defendant) which shows that the amount of Plaintiff's taxable earnings from Defendant in 1992 are equal to the amount on the W-2s. After reviewing the documents associated with the Defendant/Fiat Spa transactions (including the Employee Matters Agreement and a September 24, 1993 Inter Office Memo from M.C. Dougan), however, it is clear to the Court that Defendant mistakenly continued paying workers' compensation claims to NHI employees well into 1993 and, as such, the compensation paid to Plaintiff (as reflected on the W-2s and other documentation supplied by Defendant at that time) continued to come from Defendant, even though Plaintiff had not yet resumed working for Defendant. Accordingly, the Court is not persuaded that Plaintiff was employed by Defendant at any time from September 25, 1991, though December 31, 1992,.

For the foregoing reasons, the Court concludes that Plaintiff was not entitled to service credits from Defendant during the period from September 21, 1991, through November 15, 1993. Therefore, the Court finds that the record demonstrates that Plaintiff was entitled to 15.70 service

---

[1] Defendant maintains, and Plaintiff does not dispute, that Plaintiff was not entitled to any service credit for the period of time she was employed by Defendant from November 15, 1993, forward.

credits rather than the 17.70 service credits Defendant initially awarded her.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion to Affirm ERISA Administrative Decision (Docket #7) is GRANTED, and Plaintiff's Motion to Set Aside the Administrative Decision Related to Plaintiff's Credited Service (Docket #8) is DENIED. This matter is therefore DISMISSED, and Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 27, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 27, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290